**SUPERIOR COURT**
Washington Unit

2017 JAN 27 P 3: 46

**CIVIL DIVISION**
Docket No. 451-7-14 Wncv

**CHARLES CRANNELL,**
    Petitioner

    v.

**ANDREW PALLITO, (Former) Commissioner,**
**Vermont Department of Corrections,**
    Respondent

## DECISION

In this Rule 75 Review of Governmental Action, a hearing on the merits was held on January 12, 2017. Petitioner was present by telephone and represented by Attorney Emily Tredeau. Respondent was represented by Attorneys Jennifer G. Mihalich and Michael Leddy. Petitioner is an inmate in the custody of the Commissioner of the Department of Corrections. The claim that was pursued at the hearing was that the DOC has failed to provide him with appropriate medical care by failing to allow him to sleep with a second mattress to alleviate his back pain.[1]

After presentation of Petitioner's evidence, Respondent's attorney, on behalf of the Commissioner, moved for judgment as a matter of law on the grounds that Petitioner's evidence was not sufficient to prove that the DOC failed to provide medical care in accordance with prevailing medical standards. While the court deferred ruling and proceeded to hear Respondent's evidence, the decision below is on Respondent's motion for judgment as a matter of law and thus the only evidence considered is the evidence presented by Petitioner before Petitioner rested, looked at in the light most favorable to Petitioner and resolving all differences in favor of Petitioner. Petitioner's attorney submitted a Post-trial Memorandum after the hearing, which the court has considered.

Petitioner's evidence

Mr. Crannell is 74 years old and has been in the custody of the DOC Commissioner since 1992 (24 years). He was in an auto accident in 1971 that resulted in a ruptured disc and other

---

[1] The claim Petitioner originally filed as a grievance with the DOC was for failure to approve for him an extra mattress for his back problems when other inmates were approved for extra mattresses. In the Amended Petition, it was alleged that he had previously been allowed to have a second mattress by medical order. The claim that DOC was failing to honor a prior medical order was withdrawn at hearing, but Petitioner nonetheless pursued a claim that prevailing standards of medical care require that he be provided with a second mattress.

injuries, and he had surgery. He was laid up for 6 months and since then has experienced back pain while sleeping. The pain has varied depending on sleeping conditions. Before going to jail, he found waterbeds helpful. He does not sleep comfortably on hard surfaces.

Prior to November of 2006, he was in jail in Newport where he was allowed to use a double mattress which allowed him to sleep with no problem. In November of 2006, he was transferred to a prison facility in Kentucky. He talked to a doctor about his back, and the doctor informally supported him using two mattresses although he did not order it. The staff person on the unit to which he was assigned gave him a second mattress. He used two mattresses for an extended period of time. He was allowed to take them with him when he was transferred from the O unit to the N unit. At some point he was moved to the K unit and was not allowed to take the two mattresses. He took a spare mattress from an extra bed in his cell, and continued to sleep with two mattresses.

In late 2013, there was a shakedown in his unit. He was asked if he had paperwork authorizing him to have a second mattress. He did not have any such authorization, and the second mattress was removed. Thereafter his sleeping problems increased. In November of 2013 he complained of back pain and was seen by the medical department. His back was X-rayed, which confirmed that he had arthritis in his back and that there was fusion of his spine. He asked, "shouldn't I have a second mattress?" He was told no and was prescribed pills and one session of physical therapy, which he found helpful but physical therapy sessions were not continued by the facility.

He continued to have difficulty sleeping. He was aware that there were other inmates who were allowed to have second mattresses, so he asked them how they got them and learned that they had followed a grievance process.

On May 29, 2014, he submitted a written complaint stating that "due to a thin mattress" and the effects of his injury, he was unable to sleep at night and he requested a second mattress. On June 13, 2014, the response was: "Review of the record revealed no current order for a second mattress after evaluation by the LIP. The inmate may sign up on Sick Call if his symptoms change from his last exam." The evidence does not show whether Mr. Crannell signed up on Sick Call in response to the denial.

On June 17, 2014, he pursued the grievance, noting that "X-Rays were recently taken by this facility which show my back is full of arthritis, has spurs and is fused together." He sought approval of an extra mattress. His appeal was denied on July 1, 2014. On July 2, 2014, he appealed to the Warden, who denied the appeal on July 7, 2014. He filed this case on July 28, 2014.

In May of 2015, he had X-rays again. In June of 2015, he was moved to a prison in Baldwin, Michigan. He mentioned to the medical staff shortly after arrival that he had had a back operation and had used two mattresses for pain relief. He was told that the prison did not give extra mattresses for any reason. At first, he found an extra mattress and used it, but it was taken in a shakedown.

2

He then wrote to the medical department and requested a second mattress. He was aware that in the facility there were medical mattresses that were thicker than the one he had, which was about 2" thick, and he had had the opportunity to lie on mattresses in the infirmary that were 6" thick. The court infers from the evidence that his request for a medical mattress was denied. He filed a grievance in Michigan on December 20, 2015 while this matter was pending. This grievance was denied. He did not pursue court action based on that denial because this case was already pending.

Robert Hemond, Physician's Assistant, testified as an expert on Petitioner's behalf. He is part of the spinal injury team at the University of Vermont Medical Center where he has worked with back and neck and cervical pain patients for 11 ½ years. He saw 1900 patients in 2016, and virtually all of them had back pain. He routinely evaluates patients who experience back pain and performs a series of tests to evaluate the symptoms and their cause. He described a hierarchy of kinds of treatments available for back pain for a man of Mr. Crannell's age including surgery, physical therapy or chiropractic treatment, epidural injections, acupuncture, lumbar support, use of medium-firm mattresses, magno-therapy, and cognitive therapy.

He reviewed Mr. Crannell's DOC medical record including the radiology report of the May 2015 X-rays, which showed among other things, spondylitis, which can be a sign that a patient experiences pain. He testified that pain management and life style recommendations are within the standard of care for treatment for a person with back pain. He also testified that there is quality medical evidence, published in the journal *Lancet,* that use of a medium-firm mattress, as opposed to a firm mattress, is effective in alleviating back pain. He acknowledged that there are other studies that do not support changing mattresses although he thought they are not high quality medical evidence He further testified that there are differences within the medical community regarding the effect of mattresses, and also that use of a particular mattress is not medically necessary. He has never prescribed a mattress for a patient, although his team recommends the use of medium-firm mattresses. It is his opinion that if a pain management technique has worked in the past for a particular patient but is no longer being used and the patient seeks pain relief, that the previously successful technique be used again. It is his opinion that Mr. Crannell should be given a second mattress for pain management, and that such a recommendation is within the standard of care for management of Mr. Crannell's condition.

Analysis

As the following analysis shows, judgment must be entered for the Respondent for two reasons: (1) the medical issue that Mr. Crannell has attempted to present is not properly before the court, and (2) even if it were, there is no evidence of a failure to provide medical treatment that meets the required standard of care.

In 2013, in Kentucky, Mr. Crannell was seen by the medical staff and treatment for his back and no second mattress was ordered. He asked for a second mattress and was told no. He did not grieve that determination.

3

In 2014, six months after receiving medical treatment for back pain and being denied his medical request for a second mattress, without first seeking a new medical decision on treatment for his back pain or a new decision on a request for a second mattress, he filed a grievance asking for an administrative determination entitling him to have a second mattress. That grievance was denied because there was no medical decision that he needed a second mattress. He was told to see the medical staff (Sick Call). There is no evidence that he did.[2] Instead, he filed this case.

The issue properly before the court is whether there is any cognizable basis for Rule 75 relief when an inmate makes a request for a second mattress to regular prison staff (not medical staff) claiming a need on medical grounds without having sought a medical decision first and is denied when under the denial decision he was advised to make a Sick Call with medical staff to pursue his request.

The decision for review in this case is the denial by prison staff to provide him with a second mattress that he claims he needs medically when he had not pursued or obtained medical approval for a second mattress. The scope of review in this case is defined by the original decision that was grieved.

At the time that he had previously been denied a second mattress by medical staff (November 2013), he did not grieve that decision. That decision is not before the court in this case because it was not grieved. What he grieved was a later decision (June 2014) that was made after the passage of time and sought without first seeking medical approval.

Thus, this case is not about whether he was given improper medical care, but rather it is about whether there was any error in the prison decision to decline to give him a second mattress when he (1) had been medically denied months earlier and (2) failed to seek medical authorization when he made a new request months later.

Mr. Crannell has improperly attempted to place this court into the position of making a medical decision about a second mattress.[3] That is not this court's role. Had he received a medical decision about a second mattress, or back treatment generally, and taken issue with it, he could have grieved that decision on grounds of inadequate medical treatment. If the grievance was not resolved through the grievance process, then the court could review the final decision as a case about the adequacy of medical treatment.

That is not the course that this case took. The court cannot skip over the decision that was actually made by DOC and instead address a medical decision that DOC medical staff did

---

[2] Mr. Crannell's 2015 Michigan request appears to have followed the same path as his 2014 Kentucky request. At least, there is no evidence that he ever sought medical treatment or obtained a medical decision about a second mattress though he requested a medical mattress. It was denied and he filed a grievance that did not result in a second mattress. He did not seek review of that decision, whatever it may have been, and review of that decision is not before the court in this case.

[3] Mr. Crannell specifically asks the court to rule that he needs a second mattress rather than to determine that he has been denied adequate healthcare or that his facility has refused to provide medication or treatment that has been determined to be medically necessary.

4

not have the opportunity to make in June of 2014 but Mr. Crannell now wishes the court to make. The evidence that Mr. Crannell wishes the court to consider is not proper evidence in relation to the actual decision that was grieved. In short, an inmate cannot fail to seek medical care and then grieve a non-medical decision in order to pursue in court a claim of inadequate medical care. Mr. Crannell has not presented evidence showing that the June 2014 decision was improper, and for that reason, the Defendant's motion for judgment as a matter of law must be granted.

There is also a second reason that the motion must be granted. Even if the medical question were properly before the court, which it is not, the issue would not be whether it is or is not medically appropriate for a medical professional to prescribe or recommend a second mattress for Mr. Crannell. The court accepts Mr. Hemond's expertise in treating patients such as Mr. Crannell who experience back pain, and accepts his opinion that his recommendation is within the prevailing medical standard of care. The issue, however, would not be whether Mr. Hemond's recommendation is within the standard of care but whether the DOC failed to provide medical care that meets the required standard of medical care to be provided to inmates.

28 V.S.A. § 801(a), "Medical Care of Inmates," provides that "The Department shall provide health care for inmates in accordance with the prevailing medical standards." It does not, however, entitle inmates to the medical treatment of their choice because a medical provider somewhere might recommend it.

The court accepts the opinion testimony of Physician's Assistant Hemond that it is within the prevailing medical standard to recommend for Mr. Crannell that he have a second mattress as a means of managing pain that otherwise disrupts his sleep.

The Petitioner has not, however, provided expert opinion testimony that the decisions of DOC's medical providers on two occasions (December of 2013 in Kentucky and 2015 in Michigan) *fell below* the prevailing medical standard.[4] Even though Mr. Hemond recommends a second mattress, that does not mean that another medical professional who does not do so fails to provide adequate medical care in accordance with the prevailing medical standard.

The court cannot infer from Mr. Hemond's testimony that because he would make that recommendation, any other medical professional who does not do so would be failing to meet the required standard of care. This is particularly so given Mr. Hemond's testimony that there are different opinions in the medical community about whether there is beneficial impact on back pain from the use of particular mattresses. Moreover, there was no testimony that the medical staff persons who made medical decisions that resulted in denial of a second mattress in 2013 and 2015 were unqualified, or that they had insufficient information or failed to adequately evaluate Mr. Crannell, or what their medical opinions and/or decisions and prescriptions and/or

---

[4] To be clear, the 2013 medical decision was not grieved and is not before the court. There is no evidence that any decision against a second mattress in 2015 (Michigan) was a medical decision and, in any event, no decision about a grievance was appealed or is before the court.

5

recommendations were, and most importantly whether their treatment decisions fell below the standard of care under prevailing medical standards.

Thus, even if the framework of the case allowed the court to examine the question of whether DOC's medical staff provided medical care that failed to meet prevailing medical standards, Petitioner has not presented evidence of failure to provide medical treatment that meets the required standard of care.

For the foregoing reasons, Defendant's motion for judgment as a matter of law must be granted, and Judgment shall enter for the Respondent.

Dated this 27th day of January, 2017.

Mary Miles Teachout
Superior Court Judge

6